RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────────

UNITED STATES OF AMERICA and STATE OF MICHIGAN
*ex rels*. MOHAMED SY and DOSHAUN EDWARDS,

                    *Relators-Appellants*,

    *v.*

OAKLAND PHYSICIANS MEDICAL CENTER, LLC, dba
Pontiac General Hospital; SANYAM SHARMA,

                    *Defendants-Appellees*.

> No. 22-1011

─────────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:18-cv-10458—Nancy G. Edmunds, District Judge.

Decided and Filed:  August 12, 2022

Before:  GILMAN, GRIFFIN, and THAPAR, Circuit Judges.

─────────────────────

## COUNSEL

**ON BRIEF:**  Adam S. Akeel, AKEEL & VALENTINE, PLC, Troy, Michigan, for Appellants. Kathleen H. Klaus, Jesse L. Roth, MADDIN HAUSER ROTH & HELLER, P.C., Southfield, Michigan, for Appellees.

─────────────────────

## OPINION

─────────────────────

RONALD LEE GILMAN, Circuit Judge.  Mohamed Sy and Doshaun Edwards (the Plaintiffs) brought this qui tam action against their former employer, Oakland Physicians Medical Center, LLC, d/b/a Pontiac General Hospital, and against Sanyam Sharma, the Chief Executive Officer and Chairman of Pontiac General Hospital (the Defendants).  The Plaintiffs filed their complaint under seal pursuant to 31 U.S.C. § 3730, giving the United States 60 days to

investigate the claims and determine whether to intervene in the case. The government filed several ex parte motions to extend the investigation period, which ultimately spanned two-and-a-half years and ended when the government filed a notice electing not to intervene. The district court unsealed the complaint three days later and ordered the Plaintiffs to serve the Defendants, triggering the 90-day period during which the Plaintiffs were required to effectuate service of process pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. But the Plaintiffs did not serve the Defendants until approximately 50 days after the time to effect service had expired.

Pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, the Defendants moved to dismiss the amended complaint for insufficient service of process. The court granted the motion, concluding that the Plaintiffs had failed to establish good cause for their delay and declining to grant a discretionary extension of time. For the reasons that follow, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The Plaintiffs were employed by Pontiac General Hospital (Pontiac) until their termination on November 22, 2017. At that time, Sy served as Pontiac's Director of Nursing, and Edwards served as a Nurse Educator. In December 2017, the Plaintiffs filed separate charges of discrimination—alleging race, gender, and religious discrimination, as well as retaliation, under Title VII—with the Equal Employment Opportunity Commission (EEOC). The EEOC, a year later, declined to pursue the charges and issued "Right to Sue" letters to the Plaintiffs. But neither of the Plaintiffs exercised their right to file a Title VII suit.

While the EEOC charges were pending, however, the Plaintiffs initiated this qui tam action against the Defendants. The action alleged that Pontiac rendered unnecessary patient procedures in order to unduly inflate its Medicare and Medicaid payments. According to the Plaintiffs, this violated the False Claims Act (FCA), 31 U.S.C. § 3729, including Pontiac's alleged retaliation for the Plaintiffs' cooperation with a Center for Medicare and Medicaid Services audit; Michigan's Medicaid FCA provisions, Mich. Comp. Laws § 400.610a(2); and Michigan's Whistleblower Protection Act, Mich. Comp. Laws § 15.361, *et seq*.

On October 23, 2020, the government declined to intervene in the qui tam action. The district court unsealed the complaint on October 26, 2020, which began the 90-day period for service under Rule 4(m). This led the Plaintiffs to file a stipulation to dismiss all but their FCA retaliation claim and their claim under Michigan's Whistleblower Protection Act, but they did not seek the issuance of a summons. They instead filed an amended complaint on January 14, 2021, setting forth their two remaining claims and adding a claim for retaliation under Michigan's Medicaid FCA, Mich. Comp. Laws § 400.610a(2). The Plaintiffs then sent the amended complaint, without attaching a summons, via certified mail to the Defendants on January 22, 2021 (within the 90-day service period).

The Plaintiffs, however, never got confirmation that the Defendants received the amended complaint. One hundred and twenty-eight days after the seal was lifted, the Plaintiffs realized that no summons had been issued. Upon realizing this oversight, the Plaintiffs sought the issuance of a summons, which was provided on March 4, 2021. The Plaintiffs then served the Defendants with the amended complaint and summons on March 15, 2021, which was approximately 50 days after the 90-day period to effect service of process had already expired.

On April 26, 2021, the Defendants moved to dismiss the amended complaint under Rule 12(b)(5) of the Federal Rules of Civil Procedure for insufficient service of process. The district court granted the motion, concluding that the Plaintiffs had failed to establish good cause for their delay and declining to grant a discretionary extension of time. In response, the Plaintiffs moved the court to reconsider its original decision, but the court declined to do so. This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

We review a district court's judgment dismissing a complaint for failure to effect timely service of process under the abuse-of-discretion standard. *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an[] erroneous legal standard." *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995) (citation omitted). We may reverse only if

we are "firmly convinced that a mistake has been made, i.e., when we are left with a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Heavrin*, 330 F.3d 723, 727 (6th Cir. 2003) (citation omitted).

## B. The relevant test

Rule 4(m) of the Federal Rules of Civil Procedure sets forth the timeline for effecting service of process, as well as the scenarios that warrant enlarging that timeframe. The Rule states:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Rule 4's service-of-process requirements apply to claims brought under the FCA. *See* 31 U.S.C. § 3730(b)(3) ("The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure."). Thus, once a qui tam action is unsealed, plaintiffs must serve defendants within the 90-day period prescribed by Rule 4.

How a district court should respond to a motion to enlarge the time for service of process depends on the circumstances. If a plaintiff demonstrates good cause for the failure to timely serve process, the court must extend the time for service. Fed. R. Civ. P. 4(m). But absent a finding of good cause, the court retains discretion as to whether or not to enlarge that timeframe. *Henderson v. United States*, 517 U.S. 654, 662 (1996). On appeal, the Plaintiffs in the case before us do not challenge the court's determination that they failed to establish good cause for their delayed service of process. They instead limit their argument to the court's decision to not grant a discretionary extension of time despite the Plaintiffs' lack of good cause. We will therefore focus on whether the court abused its discretion by declining to enlarge the service-of-process period under these circumstances.

This court has not yet announced a test that district courts should employ when assessing whether to exercise their discretion to enlarge the service-of-process period. The district courts

in this circuit, however, including the district court in the present case, have consistently balanced the following five factors:

> [whether] (1) a significant extension of time was required; (2) an extension of time would prejudice the defendant other than the inherent "prejudice" in having to defend the suit; (3) the defendant had actual notice of the lawsuit; (4) a dismissal without prejudice would substantially prejudice the plaintiff; i.e., would his lawsuit be time-barred; and (5) the plaintiff had made any good faith efforts at effecting proper service of process.

*Slenzka v. Landstar Ranger, Inc.*, 204 F.R.D. 322, 326 (E.D. Mich. 2001); *see also In re Ohio Execution Protocol Litig.*, 370 F. Supp. 3d 812, 821 (S.D. Ohio 2019).

Other circuits have looked to the Advisory Committee's note to Rule 4 for guidance. *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305–06 (3d Cir. 1995) ("The Advisory Committee['s] note provides some guidance as to what factors the district court should consider when deciding to exercise its discretion to extend time for service in the absence of a finding of good cause."). The Advisory Committee's note explains that expanding the service-of-process timeline "may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Fed. R. Civ. P. 4(m) (1993) (Advisory Committee's note to 1993 amendment); *see also Morrissey v. Mayorkas*, 17 F.4th 1150, 1160 (D.C. Cir. 2021). Additional factors that courts have mentioned include whether the plaintiff was diligent in correcting the service deficiencies, *Jones v. Ramos*, 12 F.4th 745, 749 (7th Cir. 2021), and whether the plaintiff was a pro se litigant deserving of additional latitude to correct defects in the service of process, *Kurka v. Iowa County*, 628 F.3d 953, 958 (8th Cir. 2010).

Based on the foregoing, we conclude that a district court should consider the following factors when deciding whether to grant a discretionary extension of time in the absence of a finding of good cause:

> (1) whether an extension of time would be well beyond the timely service of process;
>
> (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;
>
> (3) whether the defendant had actual notice of the lawsuit;

(4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred;

(5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;

(6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and

(7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

## C.  The district court did not abuse its discretion

In the present case, the district court applied the five factors that other district courts in this circuit have consistently considered.  *See Slenzka*, 204 F.R.D. at 326.  The court concluded that, although the applicable statute of limitations would bar the Plaintiffs from refiling their claims, the remaining factors weighed in favor of the Defendants.  Specifically, the court concluded that factors two, three, and five weighed in the Defendants' favor.  The court reasoned that "an extension may prejudice Defendants in light of the fact that Plaintiffs brought this case as a qui tam action and it remained under seal for over two-and-a-half years" (factor two); that the Defendants did not appear to have had actual notice of the lawsuit (factor three); that "an attempt at mailing the complaint (without a summons) 88 days after unsealing of the complaint does not constitute a good faith effort at effectuating proper service of process" (factor five); and that the Plaintiffs failed to "set forth any explanation for why they waited so long to make this sole attempt at service during the 90-day time period" (also factor five).

In response, the Plaintiffs contend that, because their claims will be time-barred by the applicable statute of limitations, the dismissal of their case substantially prejudices them and warrants an extension.  But whether the applicable statute of limitations has run is only one of several factors that a court must consider in deciding whether to grant a discretionary extension of time.  Persuasive authority from other circuits concludes that the running of the statute of limitations does not *require* a court to grant a discretionary extension, a conclusion with which we agree.  *See Morrissey*, 17 F.4th at 1160; *Jones*, 12 F.4th at 750–51; *Zapata v. City of New York*, 502 F.3d 192, 197–98 (2d Cir. 2007); *Petrucelli*, 46 F.3d at 1306.  *But see Thrasher v. City of Amarillo*, 709 F.3d 509, 512 (5th Cir. 2013) ("If the applicable statute of limitations likely

bars future litigation, a district court's dismissal of claims under Rule 4(m) should be reviewed under the same heightened standard used to review a dismissal with prejudice." (citation and internal quotation marks omitted)).

We are thus left with the overarching question of whether the district court in the present case made a clear error of judgment in its overall balancing of the factors. Specifically, the Plaintiffs take issue with the court's conclusion that the Defendants lacked actual notice of the Plaintiffs' suit (factor three), and that the Defendants would be prejudiced by that lapse of time (factor two). But the Plaintiffs, in framing the issues, fail to encompass all that the court considered in rendering its decision. So long as the court "clearly weighed, on the record, the impact that a dismissal or an extension would have on the parties before ordering a dismissal," the court does not abuse its discretion. *Harmon v. Bogart*, 788 F. App'x 808, 810 (2d Cir. 2019); *see also Morrissey*, 17 F.4th at 1160 (affirming the district court's conclusion that, although "the statute of limitations weighed in favor of an extension[,] . . . other factors tipped the balance against an extension").

The record before us demonstrates that the district court weighed the relevant factors and reached a reasonable conclusion, which belies an abuse-of-discretion claim. *See Piper v. Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981) (explaining that, under the abuse-of-discretion standard, "where the court has considered all relevant public and private interest factors [required in a *forum non conveniens* analysis], and where its balancing of these factors is reasonable, its decision deserves substantial deference").

As to actual notice, the district court focused its reasoning on the fact that the Plaintiffs failed to establish that the Defendants had notice of the lawsuit prior to the late service on March 15, 2021. The court also factored in the Plaintiffs' lack of good cause for the delay—the Plaintiffs' "sole attempt at service" was "mailing the complaint (without a summons) 88 days after unsealing." And even then, the Defendants ultimately did not receive notice of the lawsuit until approximately 50 days after the initial 90-day period had already expired.

The district court acknowledged that 50 days was not a "very long time," which, the Plaintiffs argue, demonstrates that the court committed a clear error of judgment. But that was not the end of the court's reasoning. The court took into account the 50-day length of time and balanced that with the other relevant factors, reasoning that the Plaintiffs' insufficient explanation for that delay (the impact of the COVID-19 pandemic on the United States Postal Service's operations) as well as the Defendants' lack of actual notice outweighed the fact that 50 days was not a "very long time." Further, the court observed that the Plaintiffs "could have brought a motion to extend service [before the 90-day period expired] but failed to do so." A final relevant observation is that the Plaintiffs in this case were not proceeding pro se, meaning that additional latitude in this case is not warranted. Even though the district court did not expressly make this observation, it is another factor that supports the court's determination.

And as to the prejudicial effect of the delay, the Defendants did not make a clear showing that they will suffer actual prejudice, such as the loss of records or the death of a witness. *See, e.g.*, *Nartron Corp. v. Borg Indak, Inc.*, 848 F. Supp. 2d 725, 748 (E.D. Mich. 2012) (listing, in the context of the laches defense, examples of prejudice, such as "a defendant's inability to present a full and fair defense on the merits due to a loss of records, the death of a witness, or the unreliability of memories of long past events" (citation omitted)). The district court nevertheless found that this factor weighed in the Defendants' favor, reasoning that both the "lapse in time"— due in part to the nature of the qui tam action and the extensions sought by the government—and the Plaintiffs' "delay in service," in combination, could prejudice the Defendants. This reasoning, the Plaintiffs argue, demonstrates little more than "inherent prejudice in having to defend this suit."

But the question before us is whether the district court's analysis under this factor reflects such a clear error of judgment that its reasoning essentially upends the remainder of the court's multi-factor balancing. In general, appellate courts leave it "to the district courts to decide on the facts of each case how to weigh the prejudice to the defendant that arises from the necessity of defending an action after both the original service period and the statute of limitations have passed before service." *Zapata*, 502 F.3d at 198. "[N]o weighing of the prejudices between the

two parties can ignore that the situation is the result of the plaintiff's neglect." *Id.*  On this record, we cannot conclude that the court engaged in a clear error of judgment.

If the standard of review in this case were de novo, reversal based on an insufficient showing of actual prejudice to the Defendants might be warranted.  But prejudice to the Defendants is not the singular or dispositive factor of the analysis and should thus not be considered in isolation.  *See Harmon*, 788 F. App'x at 810 (explaining that a court does not abuse its discretion if the record shows that the court "clearly weighed . . . the impact that a dismissal or an extension would have on the parties before ordering a dismissal").

In the present case, although the length of time that passed between the original incident (the termination of the Plaintiffs in 2017) and the unsealing of the complaint was not due to any fault of the Plaintiffs, it was also not due to any fault of the Defendants.  And nothing in the record indicates that the Defendants were evading service.  At least one court of appeals has affirmed a district court's finding that the defendants were more likely to be prejudiced than the plaintiffs where the defendants, "through no fault of their own[,] would now have to defend the suit long after the statute of limitations had expired and memories had begun to fade." *Jones v. Ramos*, 12 F.4th 745, 750 (7th Cir. 2021).

Here, more than three years had passed since the Plaintiffs' termination.  The same reasoning that the court of appeals upheld in *Jones* is applicable in this case, where the district court found that the lapse of time, plus the Plaintiffs' untimely service of process, would be more likely to prejudice the Defendants.  Moreover, the district court in this case observed that because the Plaintiffs never filed a Title VII suit after the EEOC declined to pursue their charges, the Defendants could reasonably have expected no further legal action—at least none arising out of the Plaintiffs' termination.

On balance, the district court considered and weighed the relevant factors, and its analysis did not treat any one factor as dispositive of the outcome.  Although the Plaintiffs disagree with how the district court weighed the relevant factors—and even if we might have reached a different result under a de novo standard of review—"mere disagreement [between reasonable jurists] does not amount to an abuse of discretion." *United States v. Dunn*, 728 F.3d

1151, 1159 (9th Cir. 2013).  We therefore conclude that the court did not abuse its discretion when it declined to enlarge the service-of-process timeframe.

### III.  CONCLUSION

For all of the foregoing reasons, we **AFFIRM** the judgment of the district court.